Thank you for coming this morning. We have three pretty interesting cases, but we also have time limits, and so we will appreciate it if you confine yourselves to time limits unless you're answering a question from the court. Also, we're familiar with the briefs and record excerpts, but we haven't necessarily read the whole record. So again, we appreciate record citations when those are available. We'll call the first case of the morning, number 24, 60608 Hiran Management v. NLRB. Mr. Dunford. Thank you, Your Honor. May it please the court, I have reserved up to five minutes for rebuttal. Hiran Management asks the court to vacate the board's decision in part. First, the court asks the board to vacate the board's decision to dismiss without even considering Hiran's argument that four of the discharged employees are supervisors and therefore not protected by the NLRA. The board said that Hiran did not raise these issues in its initial pleading before the board, but the board does allow for amended pleadings, including for amendments to conform with the evidence presented. And as we showed at pages 11 and 12 of our opening brief and pages 6 to 8 of our reply brief, there is evidence in the record showing that these four employees are supervisors. And in particular, the board itself, the general counsel, elicited testimony to show that Mr. Peters, who was the manager at the time, either refused to or was unable to do his managerial duties and therefore appointed others to do them. The second part of the board's decision that we would ask the court to vacate is the new Thrive remedy, which was adopted by the board in December 2022, nearly nine years after the NLRA was adopted. And unlike previous decisions in which the board ordered remedies for direct harm that was easily ascertainable, the new remedy allows for the reimbursement for any foreseeable harm, no matter how attenuated, from the unfair labor practices that are at issue. But the Supreme Court, soon after the NLRA was adopted in 1938, said that the board is not allowed to impose any penalty that it wants just because it believes that may effectuate the policies of the act. That seems to be the board's main defense, that any order it authorizes, any remedy it imposes, necessarily effectuates the purpose of the act. And secondly, in a 1958 case, Russell, the Supreme Court, said that the NLRA did not establish a general scheme for compensatory damages. What's the split among the circuits? Apparently cases are coming out daily on this now. That's right. The Ninth Circuit has held that the Thrive does satisfy or does meet the requirements of the NLRA. That's the Macy's case. The Third Circuit came to the opposite conclusion in the Starbucks case. So right now there is a split. There is a dissent in the Ninth Circuit by Judge Bumate, and we would refer the court to his dissent in that case. Again, the board points to a few decisions in which it said it has imposed these kinds of remedies in the past. But in those cases, the remedies were again directly related to the ULPs, and the amounts at issue were easily ascertainable. And in fact, one of those cases that the board points to, which is Nortec, the board itself said that consequential medical damages are better adjudicated in court because courts have the expertise to identify and remedy the impact of tortious conduct. In that case, however, the employer unlawfully required an employee to do work which aggravated an existing medical condition, and therefore again the harm was direct. There's no assessment of the damages here yet, is there? No, there is not. The assessment and the calculations will be at the next stage of the proceedings. But the problem is that the board has already imposed the award and said that Hiron has to pay these damages. So the only question is really the measure. And so again, as the Nortec decision says, that would be an involved process and which would be a waste of the party's time if, of course, the board is not allowed to impose this kind of order. I have to ask one irrelevant question, but where is Mr. Haransambhum from? He is from Thailand. Thailand. That was not a name that I had ever heard before. No, that's right. That's very interesting. Apparently, he's a big fan of the 1980s, which is why he bought this bar, which is a 1980s-themed karaoke bar. So the problem here again is that this award goes far beyond what the board has authorized in the past. Of course, if the court concludes that Section 10C does authorize the board to impose this kind of remedy, then the proceeding is unconstitutional because it violated Hiron's mandates to an Article III court and a jury trial. And the reason it does that is because this turns into a legal claim at that point. Yes, Judge Jones? We're still on the frontiers of this determining that these agencies may have Article III problems, but are there any other situations in labor law where the labor board issues part of a decision and then part of it goes, I know enforcement goes to a court as a review matter, but collateral issues? Yes, and in fact, the Russell decision from 1958, the Supreme Court case, the court held that the action in the front of the board for the ULPs did not preempt state law claims. And again, the Nortec decision from the NLRB said that consequential medical damages are appropriate for courts. So the more that the remedy turns into a tort-like remedy, as we believe is the case here, the more that the case belongs in court. And the premise of the board's previous decisions is that the board is authorized to both make a cease and desist order to end the ULPs, but also to take affirmative action to effectuate the policies of the board, including a reinstatement and an order of back pay. And the previous, again, the previous decisions involve back pay and, again, direct harms, but not these kinds of any foreseeable amorphous tort-like damages that we have in this case. As the dissenters pointed out in the Thrive case itself, and as Judge Bumate points out in his dissent in Macy's, the kinds of issues that would have to be addressed at the enforcement hearing are much more court-like because of the tort-like damages that the board has imposed here. But getting back to the jarczy question, to determine whether a jury is required, the court has to decide whether the case was a case of common law, a legal claim, and whether it imposes legal damages. And jarczy pointed out that the Seventh Amendment is so important in our nation's history that it has to be scrutinized with the utmost care. And a suit of common law is one that is contrasted with a suit in equity and a suit in admiralty. And that means that any legal claim has to be addressed in an Article III court with a jury. And that is, it doesn't matter what type of form. So it's a public right, private right distinction. So what makes an unfair labor practice a private right? The private right here is because it is a private matter or it is a private dispute between the employer and the employees. We understand that the agency is the one that adjudicates the case. But that was the same as in the Fifth Circuit's recent AT&T decision. The FCC litigated that case. The court found that it was a private right, even though, again, it was a statutory question. So the private right is when there is a dispute between private parties. But more importantly, the public right exception is just that. It's an exception. And Jharkhasi emphasized that it has no textual basis in the Constitution. It is an exception to the rule that private disputes belong in courts in front of juries. And in Jharkhasi, the court identified the kinds of matters that are public rights, revenue collection, immigration, tariffs, things like that. A claim for tort-like damages is not a public right. Well, I think the question might be whether you'd separate the compensatory claim from the underlying or the original unfair labor practice. I think you could, maybe. The problem is, though, if you're entitled to a jury right, then you're entitled to the jury making all findings a fact. If there's a claim and there's a potential for legal damages, then you should be in court. Oh, so you're saying the whole labor practice claim should have gone to Article III? If there's a potential for legal damages, yes. Because it is legal. Yes, Judge Ramirez. So, Mr. Dunford, are you saying that if we agree that the NLRB is only permitted to grant equitable relief and that the remedy here includes legal relief, do we need to reach that issue regarding the in-house process? I'm sorry. If the court says that this is only equitable relief? No. If we agree that the ward could only grant equitable relief and that there is legal relief here, do we need to reach the third issue? No. If the court agrees that Section 10C allows only equitable relief, it could resolve the case on that statutory ground. If the court believes that Section 10C does allow this compensatory damages, then the court does have to reach the constitutional questions. And I'd like to, the board has argued that Jones & Laughlin Steel controls this case, but disagree. First, the remedy in Jones & Laughlin Steel was reinstatement back pay, traditional equitable remedy that the board has long ordered. And secondly, the justification that Jones & Laughlin Steel relied on for the jury question was simply that the NLRA created a new statutory right. And therefore, because it was statutory, it was necessarily a public right. That's wrong. And that, but that, and jargons obviously says the opposite. And as early as the 1970s, Curtis V. Lothar of the Supreme Court said that statutory rights can be private rights. And I'd make one final point in terms of the remedy, and this is one reason that we believe this is, it goes too far. When you're measuring equitable remedy, the measure is the amount that benefited the employer. It's the amount withheld. So for example, if there were discharged employees who were not paid their wages, or if the employer did not pay into their retirement fund, things like that, that's the measure. When you get into damages, the measure is the loss to the employee. And that's what we have here. We have losses to the employee. Again, far removed from what the board has done in the past. If there are no further questions, I'm going to... No, sir. I think not. Not at this point. You have time for rebuttal. Thank you. Thank you. Good morning, your honors. May it please the court, Joel Heller for the National Labor Relations Board. Good morning. Your honors, it is undisputed that Horan fired eight members of its front of house staff for going on strike to improve their working conditions. This is a straightforward violation of the NLRA. In response to those unlawful discharges, the board acted within its broad remedial authority in crafting a remedy to make those employees whole and to restore the status quo. And that is what the Supreme Court has time and again said is the purpose of the board's remedial discretion. It is to, quote, make the workers whole for losses suffered on account of an unfair labor practice. And it is, quote, a restoration of the situation as nearly as possible to that which would have obtained but for the illegal discrimination. That is NLRB v. Phelps Dodge, the Supreme Court decision. The board's... Let me step back and take one broader point here. How come, if that was so clear cut, how come the board didn't bother to attempt to assess compensatory damages for 90 years? Well, your honor, I agree that what was new about the Thrive decision is the board saying we are going to have this direct and foreseeable pecuniary harms element in every case, in every case in which there is a make whole remedy. In previous cases, the board had awarded similar remedies. It just didn't do it in... It did it on an ad hoc basis. And so, including in cases that this court has affirmed, things like interim expenses, interim employment expenses. An employee is unlawfully discharged. They have to go find a new job. They might have mileage expenses. They have to go to a different town to find a job. There might be housing expenses for that. And the court since the 19th... Or sorry, the board since the 1930s has included that kind of remedy as part of its make whole relief. This court has enforced such orders, for example, just one example, Miami Coca-Cola Bottling Company. That's from the 1960s. And that's just one example. That's a long time ago. It's done so more recently as well. In the D.C. Circuit, in... I'm not going to remember the exact year. King Soopers, within the past decade, has said that this kind of interim employment expenses is well within the board's authority. Well, it's... But now you're... Now the board is saying it's well within their authority to authorize interest and late fees on credit cards, penalties for early withdrawals from retirement accounts, loan or mortgage payments, transportation or child care costs. And that's not all, according to Judge Bumate's dissent, anyway. The list just is pretty... Oh, let's see. Medical expenses, maids, mink. That's quite extraordinary, isn't it? Medical expenses, just to take that last example, has also long been part of the board's remedies if it is something that the employee... That would have been covered by the employer's health care. Unreimbursed tuition payments, job search costs, specialty tool costs, utility disconnect costs, relocate costs, legal representation in eviction proceedings, and expenses resulting from a change in immigration status. That's all coming from Judge Bumate's dissent. That's not coming from the board. That's what the general counsel was advocating to the board. The general counsel did not include that whole laundry list that you just read. Judge Bumate made it up. I think Judge Bumate extrapolated from examples that were in the board's remedy. But the bigger point is that any given expense, as Counselor Horan was saying, that will be litigated in the compliance proceedings. Whether a particular expense is too indirect, is too far attenuated, because the board's position, of course, is not it can be any degree of attenuation from the unfair labor practice. The board says it has to be tailored to the unfair labor practices, which is what the Supreme Court has instructed. And since when does the board adjudicate what, you know, this variety of consequences? You said the board has occasionally awarded this, that, or the other thing. But when you offer a menu of remedies, everyone's going to claim a menu of remedies. And so the board will be wasting a lot of resources on things in addition to reinstatement and back pay, right? Well, whether that is a good idea or not is not really the question here. Well, excuse me. I mean, it also has to do with what the statute allows the board to do. Yes. I agree with you on that point. And the statute does allow the board to have this kind of remedy, because it says the board will issue a cease and desist order, and then it can order the employer or the union to have, to give such affirmative action as will effectuate the policies of the Act. And it mentions back pay, but it says including back pay. And the Supreme Court has said it is not limited, 10C is not limited to back pay, and it never has been. If I may make a point about why — It's limited to equitable remedies. Sorry? I say I think the longstanding view is that the board is limited to equitable remedies. Well, two points in response. Reinstatement and back pay. The Supreme Court has not said otherwise. They have not said otherwise, but they have also not said that, because there is no — So that means it's new. What you're asking for is new. Sorry, my point was that the Supreme Court has not said that there is a legal equitable divide in Section 10C that doesn't appear in the text of the statute like it does in other statutes. But I don't think we actually need to address that question in this decision, because even if you assume that there is that kind of distinction, this is an equitable remedy. And I'll say that for one main reason, and it is equitable in the same way that a back pay remedy is equitable, because it is incidental to the board's equitable authority to issue a cease and desist order. And this court in NLRB v. Agwelines explained that. It says a cease and desist order is retrospective. It says stop doing the unlawful actions on a going-forward basis. But the court said, but that's not all. A monetary relief gives retrospective effect to the cease and desist order from the beginning. You shouldn't — the employer, you shouldn't have been doing this. Don't do it in the future. That's the cease and desist. But monetary relief is — and you shouldn't have done it in the past. And therefore, that monetary relief is incidental to the equitable relief of cease and desist. That covers back pay, but it also covers the direct or foreseeable pecuniary harms here. There's no real difference in purpose between back pay and direct or foreseeable pecuniary harms. Both of them are meant to make the employees whole and restore the status quo, put them in the position they would have been in, but for the unfair labor practice. And the courts have talked about — has used the actual losses to employees as the measure for decades. The Supreme Court says, make workers whole for losses, Phelps Dodge. Make good to the employees what they lost through the discriminatory discharge. That's Republic Steel. This court has used the phrase expenses. Expenses incurred by the employer. So the metric has never been what the employer withheld, as Counselor Horan was saying. It's not a disgorgement or an unjust enrichment theory. It's equitable. And equitable is — it's like Title VII before Title VII was amended. So Title VII was relevantly amended twice, actually. First, it didn't say anything about equitable when it was first enacted. And that's — it was enacted in kind of — 64. Yes, in 1964. But in — the court has said it looked to 10C when it was first enacted. But then it was amended in the early 1970s to include the phrase equitable relief. And Section 10C doesn't have that here. So why is this not a tort remedy? But then it had to be amended again in 92 or so to allow, quote, compensatory damages. It did, because there was the equitable — Because there's a distinction between equitable and compensatory. That's my point. Congress had to change the law to include compensatory. I think — fair enough. But I think for the reasons kind of we've been talking about, including in the Agwiline's decision, this is equitable in nature. And so I guess — let me make the other point here. So we're talking about compensable damages or consequential damages. Those are tort terms. And so that's not actually what the Board was doing here. There is a degree of compensation. I agree with that. And it is a consequence of the unfair labor practice. And the Supreme Court has said that is what the court — the Board does. Consolidated Edison. Board remedies are, quote, a means of removing or avoiding the consequences of the violation. So the difference is, you look to the purpose of the remedy, not just the label. The Supreme Court says, avoid the, quote, you know, the bog of locomy, which is a fun phrase. And so the direct or foreseeable pecuniary harms remedy in this case is distinct from tort compensatory damages in two ways. Purpose and scope. In purpose, the courts have long held that the NLRB protects public rights. It acts in the public interest. Because these are not individual suits between an employee and employer. The employee is not a party to an NLRB proceeding. The Board — you know, this is not just me saying it. This is the Supreme Court and this court talking about the Board vindicates public, not private rights. That is different from a tort claim, which is a private cause of action to recompense injuries suffered by that individual because that individual suffered injuries. But here, the Board awards relief for the public interest of effectuating the policies of the act, signaling to other employees that if they are discriminated against for exercising their NLRB rights, they will be made whole. Therefore, they are free to exercise those rights without fear. But you know, I mean, that's nice as a matter of semantics, but I don't see anything in the history of the NLRB that suggests that the agency, scope of its authority was free to exercise its NLRB rights without fear of being made whole. I mean, I don't see anything in the history of the NLRB that suggests that the agency,  whole. I mean, I don't see anything in the history of the NLRB that suggests that the agency, scope of its authority was free to exercise its NLRB rights without fear of being made  Well, that's because I'm not, what I'm suggesting is that the NLRB, there's nothing that I understand in the history or scope of the NLRA that entitles the agency to divorce itself from conventional legal understanding and terms. What you're doing is you're creating equity, you're saying this is equitable. Well, everything, equitable, of course, as we know, is one of the broadest terms in layman's language right now, but in law, it is very specific. And so, for instance, in the ERISA context, there's been a lot of case law about what are equitable remedies. But in the labor law context, the history of labor law is reinstatement is what happens when you're wrongfully discharged according to these statutes and the Title VII. Reinstatement, it's, the language of the act says reinstatement, or it says including reinstatement with or without back pay, so it is not limited to reinstatement and back pay. No, it means you can be denied reinstatement, but that's another matter. Sure, you can be denied reinstatement in some instances, yes. My other point about why this is distinct from a tort remedy is to the scope. So the board's remedy in this case does not encompass all of what you would get in a tort claim. It does not, so tort includes, can include things like pecuniary damages, for example, or, sorry, not pecuniary, punitive, punitive damages. The board is not awarding punitive damages here. The board is not doing, the Thrive remedy would not cover, the Thrive remedy is pecuniary in nature. Torts remedies are sometimes non-pecuniary. Supreme Court has talked about that. This board's Thrive remedy talks about, it is, these are tangible harms. We're not getting into intangible things like pain and suffering, reputational damages. Not yet. Not yet, but if you're going to, I mean, that's an arbitrary limit. That it is not covered by the Thrive decision, by the remedy. The Thrive decision could have said, it could have said compensatory damages are limited to those that specifically have to do with the employee trying to find alternate work. But it didn't. That's correct. So it's only a matter of semantics and the composition of the board as to whether they say, well, these additional damages are now going to include the mental pain and suffering. By the way, is it the NLRB's purpose to put companies out of business with damage claims? No. Well, this is, this is a tiny little establishment. I looked it up on Google because I live in Houston. Right. So. You have eight employees, right? They fired eight employees. I understand that. They fired more than eight employees. Well. Right. So, I mean, if they. Where's the equity in that? So, as the legal, we're talking about the legal term, as you were mentioning, Judge Jones. Equitals meaning in the legal sense, not in some general sense. So, and sorry, if you said, well, Thrive is not, Thrive is not by its terms limited, or sorry, Thrive does not include the things we mentioned, pain and suffering. You say, well, maybe in the future. I agree that's an open question, and we're fine with the court explicitly reserving that question. They want to say we are enforcing what the board did in Thrive, but we're not weighing in on whether it could expand beyond that. We'll save the question for another day. That's fine. Mr. Keller, would you please address Mr. Dunford's argument that there was evidence in the record that four of the eight employees were supervisors and that they were merely trying to conform their post-proceeding filings to the evidence in the record? Right. So the supervisory status is an affirmative defense. It is forfeited if not raised during the hearing. This court held this much in Strand Theater of Shreveport. That pretty much decides that issue. And in Strand Theater of Shreveport, also the employer had claimed, oh, there's evidence in the record that shows they were supervisory. Therefore, you can consider the issue. This court did not buy that claim. And there's no prejudice to Horan that the board didn't consider that argument because even if you look at the evidence they discuss in their brief, it is facially insufficient to make out to meet their burden of supervisory status. Because supervisory status is a statutory term, the fact that they had what was described in Horan as managerial tasks sometimes doesn't mean they are supervisors within the meaning of the statute. And the evidence is things like taking inventory, locking the doors at the end of the night, checking the cash register. Those are not things that are in Section 211 of the NLRA that defines supervisory status. On the constitutional issue, just a moment. Of course, Jones and Laughlin's deal has decided this case, decided that issue. It rejected an Article III and Seventh Amendment argument to the board proceedings. But not to this kind of damages. That's correct. Jones and Laughlin was a back pay and reinstatement case. But the language it used was unqualified. What it said is that the Seventh Amendment does not apply where the proceeding is in the nature, is not in the nature of a suit at common law. The instant case is not a suit at common law or in the nature of such a suit. It was not limited to the particular remedies at issue. I mean, I think under jarcossy, that's an interesting question. If public right is not under jarcossy, is not limited to the distinction, you know, does the statute create it versus the common law? So if that was the rationale for Jones and Laughlin, it would be in doubt. But nevertheless, it may be that labor relations are public right. I'm not sure. But authorizing this kind of, you know, additional remedy for labor relations to me brings it closer to the FCC case. Well, the FCC case, the AT&T or the SEC case. Whichever one had a fine. They both had fines. Right. And this wasn't a fine. Well, I mean. This is make whole relief. Yeah, well, you can say that all you want to. But I don't know. I don't know any agency. Tell me any agency in the U.S. government that issues make whole relief. Besides the NLRA? Yes. What is another agency that issues make whole relief? Right. I guess I'm not sure. Nor am I. I could be wrong. But I don't. You know, so we're in not virgin territory here. The reason why it's make whole relief, unlike in JARCAS-C, is it's calculated based on the losses to the employees. In JARCAS-C, the fine was calculated based on the culpability of the company. FCC, the AT&T, it's the same thing. So this is not punitive in that sense where you measure based on culpability. The other difference between JARCAS-C is that the civil penalties in that case were previously had been available only when the SEC went to court. The SEC had the choice whether to go to court or proceed internally. There's nothing like that in the NLRB. All NLRA cases have always gone through the NLRB. There's no history of those cases being brought in an Article III court. There's no history like in JARCAS-C of the agency being able to decide which one it goes to or not. If I can leave you with two final points because my time is running out. These may seem like difficult or interesting issues, but Supreme Court and Fifth Circuit precedent get you most of the way there, and in some cases all of the way there. The court is, of course, bound by Supreme Court precedent. The second point is that without this remedy, the eight unlawfully discharged employees would be less than whole. They would be worse off because they exercised their NLRA rights, and that is contrary to the core remedial purpose of the statute. Thank you. All right, thank you. Okay, Mr. Dunford. Thank you. Briefly on the supervisor question, the cases of Strand Theater and Triton Foods, there was significantly less evidence in those cases. In fact, in Strand Theater, there were two comments and some contractual language different from the evidence that was presented in this case. Judge Jones, as you alluded to, the key question here, I think, is the nature of the remedy. When you're undergoing the Seventh Amendment analysis, of course, the question is whether there is a legal claim and whether there are legal damages. The Supreme Court said that the remedy is the more important of the two, and so even if the NLRB action here does not have an exact analogy at common law, the remedy is still the more important. And the court made this point in AT&T recently. It said that the claim in JRCC was more analogous to a common law claim, but nonetheless found that the claim in FCC was still a common law type claim. Also, in the FCC case, the FCC had the option to bring the case either in front of an ALJ or before itself. So unlike JRCC, where the FCC did have the option to go to court or to . . . I don't think that really makes a difference. I don't think it does either. And that's my point, that this court in AT&T recognized that that's not an important distinction. The question is the nature of the claim, not where the claim might be brought. As for the make-all remedies, if that's the only standard, then there is no limit to what the Board can order in these kinds of decisions. In fact, at page 33 of the NLRB's brief, it's discussing how the award here is merely an incident to the cease and desist order, and therefore it should be viewed as equity. But the Board says any additional remedies ordered by the Board are thus appropriately viewed as an extension of that order. Again, there seems to be no limit, which carries it far outside of what the Board has allowed in the past. My friend mentioned the quotation from the Supreme Court's decision in 7-Up, where he said the Court did not want to get in this bog of alchemy about what the types of decisions or the remedies are. But I would point out that in that decision, what the Court did not want to get into was whether the award was remedial or punitive. And likewise, in the King-Super's case that my friend cited, the NLRB in that case said that there were two reasons for the remedy in that case. One was for reimbursement, and the second was for deterrence. So to the extent those decisions should be considered by this Court, I think it shows that the NLRB here is stepping beyond its bounds. And if we were to start this case over again 60 years ago, we might be arguing that all those remedies go too far. But as we are at this point, the Supreme Court has allowed some make whole remedies tied directly to the ULPs for amounts that are easily ascertainable. In this case, we're far beyond that. We believe, therefore, that it's both beyond the statute. But if not, then it is violative of the Article III and the Seventh Amendment. Thank you, sir. Thank you. All right.